NOT FOR PUBLICATION (Doc. Nos. 57, 67)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | Civil No. 14-6105 (RBK/JS) |
| Plaintiff, | **OPINION** |
| v. |  |
| QUICKSTUFF, LLC., et al., |  |
| Defendants. |  |

**KUGLER**, United States District Judge:

Travelers Property Casualty Company of America ("Plaintiff") brings state law claims for workers' compensation fraud, violations of the New Jersey Insurance Fraud Prevention Act, common law fraud, successor liability, fraudulent conveyance, conspiracy, and a claim to pierce the corporate veil against Clodoveo Diaz and Jorge Merinos (collectively "Defendants"). First Amended Complaint ("FAC") (Doc. No. 51). This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment against Defendants Diaz and Merinos as to Counts One, Two, Three, Five, Six, and Seven of the FAC, and for treble damages pursuant to the New Jersey Insurance Fraud Prevention Act (Doc. No. 57), as well as Defendant Merinos's Cross Motion for Summary Judgment (Doc. No. 67). For the reasons discussed below, Plaintiff's Motion is **GRANTED IN PART** and otherwise **DENIED** and Defendant's Motion is **GRANTED IN PART** and otherwise **DENIED**.

1

## I. FACTUAL BACKGROUND[1]

Clodoveo Diaz ("Diaz") formed C&D Staffing Service, LLC in 2004. Plaintiff's Statement of Material Facts as to Which There is No Dispute ("Pl.'s Statement") ¶ 2 (Doc. No. 57-1); Diaz's Response to Statement of Material Facts[2] ("Diaz Resp.") ¶ 2 (Doc. No. 69). C&D provided labor to Lucca Freezer and Cold Storage, in addition to providing labor to farms for picking berries and sorting/packing fruits and vegetables. Pl.'s Statement ¶ 7; Diaz Resp. ¶ 7. Diaz operated C&D until 2009. Pl.'s Statement ¶ 3; Diaz Resp. ¶ 3. Diaz, in part, came up with the idea to form Quickstuff, LLC towards the end of 2008. Pl.'s Statement ¶ 5-6; Diaz Resp. ¶ 5-6. Diaz discussed forming Quickstuff with Maria Castillo so he could continue providing labor to Lucca Freezer and Cold Storage under the name of a new company. Pl.'s Statement ¶ 6-7; Diaz Resp. ¶ 6-7. Due to his immigration concerns, Diaz did not want to be the owner of Quickstuff on paper, but he explained to Ms. Castillo that he would run Quickstuff as he ran C&D. Pl.'s Statement ¶ 7-8; Diaz Resp. ¶ 7-8. Diaz knew what Lucca's operation did, and he knew that the laborers sent by C&D and Quickstuff sent to Lucca were working in the Lucca building. Pl.'s Statement ¶ 12; Diaz Resp. ¶ 12. Quickstuff initially obtained workers' compensation coverage from Farm Family Insurance Company. Pl.'s Statement ¶ 13; Diaz Resp. ¶ 13.

---

[1] The Court notes from the outset that there are instances in Defendants' respective Responsive Statements of Material Facts where Defendants attempt to dispute a fact asserted and supported from the record by Plaintiffs, without supporting their position with a citation to the record. Such assertions are insufficient to create an actual dispute of fact, and the Court will regard these paragraphs as undisputed for purposes of these Motions. *See Juster Acquisition Co., v. N. Hudson Sewerage Auth.*, No. 12-3427, 2014 WL 268652, at *5 n.4 (D.N.J. Jan. 23, 2014) ("[A]ny statement that is not explicitly denied with a proper citation to the record in a responsive Rule 56.1 statement is deemed admitted."). The Court also notes that the parties' statements of material fact and corresponding responsive statements contain numerous legal arguments. *See generally*, Jorge Merinos's Response to Travelers Material Statement of Facts (Doc. No. 67-9). The Court would like to remind the parties that Local Civil Rule 56.1(a) states, "[e]ach statement of material facts shall be a separate document (not part of a brief) and *shall not contain legal argument or conclusions of law*." (emphasis added).

[2] The Court notes that Diaz's counsel has disregarded Local Rule 56.1 and has submitted his response to Plaintiff's Statement of Material Facts and Supplemental Statement of Disputed Material Facts as part of Defendant's Memorandum of Law Opposing Plaintiff's Motion for Summary Judgment. The Court will refer to these sections as Diaz's Response to Statement of Material Facts and Diaz's Supplemental Statement for the sake of clarity.

Jorge Merinos was hired to be the manager of Quickstuff in April 2011. Giebner Cert., Ex. C ("Merinos Depo.") at 24:12-18 (Doc. No. 67-4). Merinos ran Quickstuff's office, which included responsibility for supervising payroll, sales and marketing, and hiring employees. *Id.* at 27:20-22, 43:14-23; Giebner Cert., Ex. D ("Diaz Depo.") at 22:24-23:2.

On December 11, 2012, Maria Castillo submitted an Application for Quickstuff to obtain workers' compensation insurance coverage through the New Jersey Workers' Compensation Insurance Plan. Kuller Cert., Ex. CD 1-B (Doc. No. 57-4). While Ms. Castillo's name appeared on this application, any information in the application came from Mr. Diaz. Pl.'s Statement ¶ 22; Diaz Resp. ¶ 22. One portion of the application required Quickstuff to represent its "Projected Classification of Operations," including total wages. Kuller Cert., Ex. CD 1-B. Diaz admits that the projected total wages in the application were too low. Pl.'s Statement ¶ 24; Diaz Resp. ¶ 24. Diaz, however, claims that the payroll estimate was "conservative" to account for Quickstuff's tenuous relationship with Lucca, and that he "knew" there would be an audit resulting in an additional premium, which Quickstuff would pay. Diaz Resp. ¶ 24; Diaz Br. at 16 (Doc. No. 69). The Application also requested a complete description of the business, which stated "[a]pplicant provides laborers to farmers for planting, harvesting and packing of fruits and vegetables." Pl.'s Statement ¶ 56; Diaz Resp. ¶ 56. This answer, as well as information regarding payroll, number of employees, and any later changes regarding the kind of work conducted by the business, the business ownership or structure, etc., were material to the underwriting of the Travelers policy. Pl.'s Statement ¶ 55-59; Diaz Resp. ¶ 55-59.

Diaz had also decided by December 2012 to move Lucca's business from Quickstuff to a new company, A&C Staffing, LLC. Pl.'s Statement ¶ 26; Diaz Resp. ¶ 26. A&C's owner on paper would be Avelino Castillo, Maria Castillo's husband. Pl.'s Statement ¶ 29; Diaz Resp.

¶ 29. However, Avelino Castillo had no role in running A&C; Diaz and Merinos were in charge. Pl.'s Statement ¶ 33; Diaz Resp. ¶ 33. In exchange for using her as the official owner of Quickstuff, Diaz paid for Maria Castillo to take yearly trips to Mexico. Pl.'s Statement ¶ 35; Diaz Resp. ¶ 35.

Diaz admits that he decided to switch Quickstuff's business over to A&C in light of the insurance cancellation sent by Farm Family, their insurer before Plaintiff. Pl.'s Statement ¶ 27; Diaz Resp. ¶ 27. Diaz then directed Merinos to clear the switchover with Lucca, though Merinos only admits to informing Lucca of the switchover from Quickstuff to A&C. Pl.'s Statement ¶ 30; Diaz Resp. ¶ 30; Merinos's Response to Travelers Material Statement of Facts[3] ("Merinos Resp.") ¶ 30. Later, in the middle of 2013, Diaz and Merinos explained to Rusty Lucca that they would be switching to A&C because of Quickstuff's high insurance premiums. Pl.'s Statement ¶ 50; Diaz Resp.¶ 50; Merinos Resp. ¶ 50. Diaz did not disclose the transfer of Quickstuff's business to A&C to Travelers. Pl.'s Statement ¶ 66; Diaz Resp. ¶ 66.

In early March 2013, Melanie Layton, an auditor for Travelers, received an e-mail directing her to conduct a preliminary audit for Quickstuff. Kuller Cert., Ex. E ("Layton Depo.") at 6:6-7 (Doc. No. 57-8). Layton testified that the preliminary audit was completed in June 2013. *Id.* at 5:22-23.

On August 30, 2013, Travelers sent Quickstuff a notice that their coverage would be cancelled on October 19, 2013 for non-payment of premium unless payment was received by that date. Giebner Cert., Ex. A (Doc. No. 67-2). The cancellation notice invited Quickstuff to dispute by written documentation the specific areas of dispute and Quickstuff's estimate of the undisputed amount owed. *Id.*

---

[3] The Court notes that Merinos's counsel has disregarded Local Rule 56.1 and submitted his response to Plaintiff's Statement of Material Facts as part of his own Motion for Summary Judgment. The Court will refer to this section as Merinos's Response to Travelers Material Statement of Facts for the sake of clarity.

Merinos sent Travelers a letter on October 17, 2013. Giebner Cert., Ex. A. The letter argued that Quickstuff's policy was given an incorrect classification as "warehousing-cold storage," and claimed that Quickstuff's employees "do not work for a cold storage warehouse nor do they operate forklifts or enter the cold storage unit." *Id.* The purpose of the letter was to have Travelers correct the classification of Quickstuff's workforce for the calculation of their premium in the final audit. *Id.* The parties agree that the language in this letter came from Mr. Garrison, Quickstuff's insurance agent. Merinos Statement ¶ 12; Response of Travelers Property Casualty Company of America to the Statement of Material Facts Not in Dispute of Defendant Jorge Merinos ("Pl.'s Merinos Resp.") ¶ 12. Merinos signed the letter with the expectation that the final premiums would go down. Pl.'s Statement ¶ 48; Merinos Resp. ¶ 48. Travelers cancelled Quickstuff's policy on October 19, 2013. Giebner Cert., Ex. A.

Garrison sent a follow-up e-mail to Travelers on December 3, 2013 to inquire how long the final audit was going to take, as Quickstuff wanted to pay its premium before the end of the year. Merinos Statement ¶ 14; Pl.'s Merinos Resp. ¶ 14. Quickstuff issued a check to Travelers in the amount of $215,000, which they considered sufficient to pay off their premium based on their belief that their employees should be classified as vegetable farm workers and drivers. Merinos Statement ¶ 15; Pl.'s Merinos Resp. ¶ 15. Travelers disputes the sufficiency of this payment.

## II. STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict

for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Id.* at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. *Id.* at 255.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. Furthermore, the nonmoving may not simply allege facts, but instead must "identify those facts of record which would contradict the facts identified by the movant." *Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002). The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

*Count I: Workers' Compensation Fraud*

New Jersey law imposes civil liability against "any person who wrongfully obtains benefits or evades the full payment of benefits or premiums by means of a violation of the provisions of [34:15-57.4(a)]." N.J. Stat. Ann. § 34:15-57.4(b). A person violates subsection (a) if they "purposely or knowingly . . . make[] a false or misleading statement, representation or submission, including a misclassification of employees, or engages in a deceptive leasing practice, for the purpose of evading the full payment of benefits or premiums . . . ." *Id.* § 34:15-57.4(a)(2). "A person who evades the full payment of premiums . . . or improperly denies or

6

delays benefits . . . is liable to pay the sum due and owing plus simple interest. *Id.* § 34:15-57.4(c)(3).

Plaintiff argues that they are entitled to summary judgment as to Count I because Diaz and Merinos made multiple false or misleading statements and/or representations. Diaz argues that Plaintiff should not be granted summary judgment as to any count based on misrepresentation of classification because issues of material fact exists as to the correct classification for the employees. Diaz Br. at 15-16. Diaz further argues that summary judgment regarding misrepresentations of the number of employees/amount of wages is inappropriate because the misstated numbers in the NJ CRIB application included "projections," which constitute opinions that have no truth value. *Id.* at 16-18. Plaintiff counters that the claim is not that Defendants' classification of Quickstuff's business was incorrect, but rather, that Defendants misrepresented material facts regarding classification and misrepresented payroll. Pl.'s Resp. Br. at 1 (Doc. No. 73).

Diaz concedes that "the numbers submitted were conservative," but argues that his motivation was not "nefarious." Diaz Br. at 16. Rather, the fudged number of employees and the current wages were "a prudent business decision in light of an uncertain future in regards to their relationship with Lucca Freezers." *Id.* Diaz further argues summary judgment is inappropriate because there is a material dispute as to the proper classification that he allegedly misrepresented. The Court notes that Diaz admitted to providing a "complete description" of Quickstuff's business that referred to "providing laborers to farmers for planting, harvesting and packing of fruits and vegetables." Pl.'s Statement ¶ 56; Diaz Resp. ¶ 56. Diaz also noted that all of the representations in Quickstuff's insurance application came from him. There is no dispute that Quickstuff provided laborers to Lucca Freezer and Cold Storage. It does not matter that

7

Quickstuff employees performed packing of fruits and vegetables at Lucca; Diaz omitted the work activities provided to Lucca (who does not appear to be a farmer) from Quickstuff's application. The Court notes no dispute as to any material fact that goes towards establishing workers' compensation fraud against Diaz. Accordingly, the Court grants Plaintiff's motion for summary judgment as to Diaz's liability for Count I.

Merinos notes, and Plaintiff admits, that he was not involved in making any of the allegedly false or misleading statements submitted in Quickstuff's initial insurance application. Merinos also argues that his October 17, 2013 letter could not have been the proximate cause of Plaintiff's alleged damages, since Travelers cancelled the policy shortly thereafter. Merinos Br. at 25-26 (Doc. No. 67-9). As an initial matter, the Court notes that Merinos's October 17, 2013 letter states that Quickstuff's employees "do not work for a cold storage warehouse nor do they operate forklifts or enter the cold storage unit." Giebner Cert., Ex. A. Merinos testified that Quickstuff employees "did operate forklifts in the repack room" but "didn't operate the forklifts in the cold storage or in the warehouse – the cold storage warehouse." Merinos Depo. at 91:15-92:16. The Court finds that no reasonable juror could interpret Merinos's letter as saying that Quickstuff employees did not operate forklifts in the cold storage warehouse. The letter denies that the employees work in the cold storage warehouse, denies that employees operate forklifts, and denies that employees enter the cold storage unit. In light of Merinos's testimony that Quickstuff employees did, in fact, operate forklifts, the Court sees no dispute that the letter contained a false or misleading statement. Furthermore, Merinos acknowledged that the purpose of sending this letter was to reduce the final premium payment Quickstuff would owe after Travelers's final audit. Therefore, the false or misleading statement was made in the context of trying to avoid paying the premiums owed.

Merinos also argues that his letter could not have caused Plaintiff's damages. Merinos cites title 34, section 15-57.4(b), which states:

> Any person who wrongfully obtains benefits or evades the full payment of benefits or premiums by means of a violation of the provisions of subsection a. of this section shall be civilly liable to any person injured by the violation for damages and all reasonable costs and attorney fees of the injured person.

Merinos argues that his letter did not injure Plaintiff since the coverage was cancelled shortly thereafter. Merinos overlooks section 15-57.4(c)(3), which states that "a person who evades the full payment of premiums . . . is liable to pay the sum due and owing plus simple interest." This subsection lacks the "injury" language Merinos relies upon; the law simply states that a person who avoids paying premiums is liable. The Court finds no dispute as to a material fact demonstrating Merinos's false or misleading statement intended to avoid paying workers' compensation insurance premiums. Accordingly, the Court grants Plaintiff's motion for judgment as to Merinos's liability for Count I and denies Defendant's motion for summary judgment as to Count I.

*Count II: New Jersey Insurance Fraud Prevention Act*

The New Jersey Insurance Fraud Prevention Act ("IFPA") states that "[a] person or practitioner violates this act if he . . . prepares or makes any written or oral statement, intended to be presented to any insurance company or producer for the purpose of obtaining . . . an insurance policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to an insurance application or contract." N.J. Stat. Ann. § 17:33A-4.(a)(4)(b). An individual may also be liable if they "conceal[] or knowingly fail[] to disclose any evidence, written or oral, which may be relevant to a finding that a violation of the provisions of paragraph (4) of this subsection a. has or has not occurred." *Id.* § 17:33A-4.(a)(5).

9

A person or practitioner may also be liable if they "knowingly assist[], conspire[] with, or urge[] any person or practitioner to violate any provisions of th[e] act." *Id.* § 17:33A-4.(a)(6)(b).

The Court has already found in its analysis of Count I that there is no material dispute that Diaz presented false or misleading statements to Travelers for the purpose of obtaining workers' compensation insurance. Accordingly, the Court grants Plaintiff's motion for summary judgment as to Diaz's liability for Count II. Furthermore, the Court finds that Diaz engaged in a pattern of violating the IFPA. The IFPA states that a pattern means "five or more related violations" of the IFPA. *Id.* § 17:33A-3(j). "Violations are related if they involve either the same victim, or same or similar actions on the part of the person or practitioner charged with violating" the Act. *Id.* Given the IFPA's language that "[a] person . . . violates this act if he . . . prepares or makes any written or oral *statement*," rather than whenever they make a *claim*, each separate false or misleading statement may constitute one violation. N.J. Stat. Ann. § 17:33A-4.(a)(4)(b). Diaz made at least five misrepresentations in connection with Quickstuff's insurance application to Travelers when he: represented that a *complete* description of Quickstuff's business was "provid[ing] laborers to farmers for planting, harvesting, and packing of fruits and vegetables"; represented that most if not all of Quickstuff's employees were farm laborers; projected that Quickstuff's total wages would be $1,000,000; certified in the Employer Certification that all information provided was true and accurate; and affirmed that Quickstuff would notify Travelers of any changes in important underwriting information. Therefore, the Court finds that Plaintiff is entitled to treble damages against Diaz pursuant to section 17:33A-7(b).

As for Merinos, the Court finds that Plaintiff has presented no facts to suggest Merinos made any false or misleading statements to Travelers for the purpose of *obtaining* an insurance policy from Travelers, nor did he assist, conspire with, or urge Diaz to make the initial

10

misrepresentations or omissions in the application. Plaintiff agreed that Diaz was solely responsible for the statements contained within the application. Furthermore, the October 17, 2013 letter from Merinos to Travelers may have been intended to affect the payment of premiums, but the letter was not intended to *obtain* an insurance policy. It follows that the IFPA does not apply to Merinos's conduct. Accordingly, the Court denies Plaintiff's motion for summary judgment as to Merinos's liability for Count II and grants Defendant's motion for summary judgment as to Count II.

*Count III: Common Law Fraud*

New Jersey courts have stated that there are five necessary elements to establish a claim of common law fraud. They are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Jewish Ctr. of Sussex Cty. v. Whale*, 432 A.2d 521, 524 (N.J. 1981).

The Court has already found that there is no dispute that Diaz misrepresented the entire business of Quickstuff in the initial application for coverage to Travelers. The Court further finds that there is no dispute that Diaz knew that employees of Quickstuff were engaged in activities other than "provid[ing] laborers to farmers for planting, harvesting, and packing of fruits and vegetables," namely, providing laborers to cold storage facilities for packing and repacking of fruits and vegetables. There is no dispute that Diaz intended for Travelers to rely on his representations when he submitted the application for workers' compensation insurance. Diaz does not appear to contest that Travelers relied on his statements in calculating premiums. Finally, Travelers alleges damages of the initially unbilled, and still uncollected premiums based on Diaz's misrepresentations as well as the costs and expenses of their audit and the instant suit.

Diaz contests that the uncollected premiums are properly owed due to his continued belief that Quickstuff's employees were properly classified before his misrepresentations were discovered. The Court finds that no reasonable fact finder could determine that Diaz's actions have not caused Plaintiff's alleged damages. Accordingly, the Court grants Plaintiff's motion for summary judgment as to Diaz's liability for Count III.

As for Merinos, the Court finds that Plaintiff cannot establish that they reasonably relied upon Merinos's alleged misrepresentations in the October 17, 2013 letter. Prior to Merinos's letter, Plaintiff's audit had already determined that Quickstuff owed higher premiums than initially calculated. Plaintiff did not change their position on the Quickstuff's premiums based on Merinos's letter. Therefore, Plaintiff cannot demonstrate reasonable reliance on Merinos's alleged material misrepresentation in the October 17, 2013 letter. Accordingly, the Court denies Plaintiff's motion for summary judgment as to Merinos's liability for Count III and grants Merinos's motion for summary judgment as to Count III.

*Count V: Fraudulent Conveyance*

Plaintiff alleges that Defendants fraudulently transferred Quickstuff's assets to A&C. In order to determine whether a defendant is liable for actual fraud, the Court must engage in a two-step analysis. First, the Court must determine "'whether the debtor [or person making the conveyance] has put some asset beyond the reach of creditors which would have been available to them' at some time 'but for the conveyance.'" *Gilchinsky v. Nat'l Westminster Bank N.J.,* 732 A.2d 482, 488 (quoting *In re Wolensky's Ltd. P'ship,* 163 B.R. 615, 626–27 (Bankr. D.C. 1993); *Grand Lab., Inc. v. Midcon Labs of Iowa,* 32 F.3d 1277, 1282 (8th Cir. 1994)). Second, the Court must assess "whether the debtor transferred property with . . . intent to defraud, delay,

12

or hinder the creditor." *Id.* The party seeking to invalidate the conveyance has the burden of proving actual intent. *Id.*

In order to determine whether a debtor conveyed property with actual intent to place it beyond the reach of creditors, New Jersey courts consider the "badges of fraud" listed in N.J. Stat. Ann. 25:2–26.[4] "In determining actual intent to defraud, courts should balance the factors enumerated in N.J.S.A. 25:2–26, as well as any other factors relevant to the transaction." *Id.* at 489. "The proper inquiry is whether the badges of fraud are present, not whether some factors are absent." *Id.* Moreover, "[a]lthough the presence of a single factor . . . may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." *Id.* at 490.

---

[4] N.J. Stat. Ann. 25:2–26 provides:
In determining actual intent under subsection a. of R.S. 25:2–26 consideration may be given, among other factors, to whether:

a. The transfer or obligation was to an insider;

b. The debtor retained possession or control of the property transferred after the transfer;

c. The transfer or obligation was disclosed or concealed;

d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

e. The transfer was of substantially all of the debtor's assets;

f. The debtor absconded;

g. The debtor removed or concealed assets;

h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and

k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

13

Both Diaz and Merinos argue that Plaintiff has failed to adequately claim that a fraudulent conveyance took place because the most substantial asset transferred, the business relationship with Lucca's, would have never been available to Plaintiff as a creditor. *See* Diaz Br. at 19-20; Merinos Br. at 30-32. Diaz states that the relationship with Lucca had no value if Quickstuff went out of business from Plaintiff's high insurance premiums. Diaz Br. at 20. Diaz claims that the important issue here is that Plaintiff would have nothing to collect against if he *had not* transferred the business relationship with Lucca from Quickstuff to A&C. *Id.*

Plaintiff rebuts this claim by reference to the Uniform Fraudulent Transfer Act, which defines "asset" as "property of a debtor" which does not include:

> property to the extent it is encumbered by a lien . . . property to the extent it is generally exempt under nonbankruptcy law; or . . . an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant.

N.J. Sta. Ann. § 25:2-21. The Court finds no factual contention that Diaz or Merinos transferred any assets other than the business relationship with Lucca's from Quickstuff to A&C. This, however, is not dispositive. Assets can be tangible or intangible. One notable intangible asset is goodwill. The Supreme Court has expressed the definition of "goodwill" in many iterations. Instructively, goodwill has been described as "that element of value which inheres in the fixed and favorable consideration of customers, arising from an established and well-known and well-conducted business." *Des Moines Gas Co. v. Des Moines*, 238 U.S. 153, 165 (1915). There is no factual contention that Quickstuff did not have an established, well-known, and well-conducted course of business with Lucca's. The Court concludes that Diaz did, in fact, transfer a valuable asset (Quickstuff's goodwill).

The Court now turns to whether the transfer was made with actual intent to defraud Plaintiff. As discussed above, the Court looks for "badges of fraud" present in the transaction.

14

First, the Court notes that Quickstuff's business was transferred from Maria Castillo to an insider, her husband, Avelino Castillo. Pl.'s Statement ¶ 29; Diaz Resp. ¶ 29. Second, Diaz retained control of the business relationship after the transfer, since Avelino Castillo had no role in running the business of A&C. Pl.'s Statement ¶ 33; Diaz Resp. ¶ 33. The business was strictly run by Diaz and Merinos. *Id.* Third, the transfer was not disclosed to Travelers. Pl.'s Statement ¶ 66; Diaz Resp. ¶ 66. Additionally, the transfer included substantially all of Quickstuff's assets (in large part, the business relationship with Lucca's). Pl.'s Statement ¶ 19; Diaz Resp. ¶ 19. Finally, it is clear that Quickstuff became insolvent shortly after the transfer was made, since operations had completely turned over to A&C by September 2013. Pl.'s Statement ¶ 31; Diaz Resp. ¶ 31. These facts present no fewer than five (5) badges of fraud. The Court notes that New Jersey courts have held that "the confluence of several [badges of fraud] in one transaction generally provides conclusive evidence of an actual intent to defraud." *Gilchinsky*, 732 A.2d at 490. The Court finds that there is no dispute of material fact regarding the badges of fraud discussed above, therefore Plaintiff has established actual intent to defraud. Accordingly, the Court grants Plaintiff's motion for summary judgment as to Diaz's liability for Count V.

Plaintiff cites several New Jersey cases for the proposition that Merinos may also be held liable for the alleged fraudulent transfer. Plaintiff cites to *Bondi v. Citigroup, Inc.*, No. BER-L-10902-04, 2005 WL 975856 (N.J. Super. Ct. Law Div. Feb. 28, 2005). The court in *Bondi* stated that "[s]ince aiding and abetting liability is ensconced in New Jersey tort law, I can not say that it is beyond reason that the Legislature contemplated allowing parties to seek remedies within the framework of the UFTA that are bottomed upon a theory of aiding and abetting." *Id.* at * 20. The Court observes that *Bondi* does not present an affirmative statement that aiding and abetting

liability exists for violations of the Uniform Fraudulent Transfer Act ("UFTA") in New Jersey.[5] Plaintiff also cites *Banco Popular N. Am. v. Gandi*, 876 A.2d 253 (N.J. 2005) for the proposition that a non-transferee can be liable for assisting with a fraudulent transfer if the plaintiff can show that the third party had the requisite knowledge and assisted with the transfer on the basis of a civil conspiracy. *Banco Popular*, 876 A.2d at 262-64. The Court does not read *Banco Popular* as recognizing aiding and abetting liability for UFTA violations. Rather, the New Jersey Supreme Court held that a plaintiff may properly allege "a conspiracy cause of action against [an attorney] for encouraging [their client] to violate the UFTA and for assisting [them] in transferring assets to avoid a creditor." *Id.* at 263. The Court finds that Plaintiff cannot state a claim for a direct violation of the UFTA against Merinos as a non-transferee. Accordingly, the Court denies Plaintiff's motion for summary judgment as to Merinos's liability for Count V and grants Merinos's motion for summary judgment as to Count V.

*Count VI: Civil Conspiracy*

The New Jersey Supreme Court has stated that "a civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular*, 876 A.2d at 263 (citations omitted). "It is enough for liability if you understand the general objective of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them." *Id.* (citing *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). However, "[a]n unwitting party may not be liable under a conspiracy theory." *Id.*

---

[5] The Court observes that many other courts have held that aiding and abetting liability is unavailable for UFTA violations. *See Magten Asset Management Corp. v. Paul Hastings Janofsky & Walker LLP*, No. Civ.A04-1256-JJF, 2007 WL 129003, at *3 (Jan. 12, 2007 D. Del.) (compiling cases).

16

The Court has already granted judgment against Diaz for the fraudulent transfer of Quickstuff's assets to A&C, which was certainly an overt act that resulted in damage to Plaintiff. The Court also finds that there is no genuine dispute that Diaz acted in combination with at least one other person to commit that act. Notably, Avelino Castillo agreed to act as the owner of A&C, which assisted Diaz in executing his fraudulent transfer. There is no genuine dispute of material fact regarding either of these elements. Accordingly, the Court grants Plaintiff's motion for summary judgment as to Diaz's liability for Count VI.

As discussed above, a plaintiff bringing a claim against a conspirator for violating the UFTA "must satisfy the agreement and knowledge aspects of civil conspiracy and all of the underlying components of a UFTA claim." *Id.* Merinos contends that he took no part in the planning of the transfer of Quickstuff's business to A&C. Merinos Br. at 31. Diaz testified that the decision to transfer the business to A&C was discussed exclusively between himself, Maria Castillo, and Avelino Castillo over dinner. Diaz Depo. at 48:7-50:8. Garrison also testified that Merinos was not involved in the decision to shut down Quickstuff and continue operations as A&C. Giebner Cert., Ex. B at 111:11-19 (Doc. No. 67-3). Merinos contends that his only involvement in any alleged fraudulent transfer was conveying the decision to Mr. Lucca. Merinos Br. at 31.

Conversely, Merinos testified that Diaz explained to him that Quickstuff was switching to A&C because they had lost their workers' compensation insurance due to "too many claims." Merinos Depo. at 69:4-19. Merinos later conveyed the message to Lucca. These facts provide a basis to conclude that Merinos understood the general objective of the scheme, accepted that objective, and implicitly did his part to further it. The Court believes that Merinos's knowledge and acceptance of the potential scheme is disputed in light of Merinos's contention that he was

17

simply conveying the news to Lucca. Therefore, the Court denies Plaintiff's motion for summary judgment as to Merinos's liability for Count VI and the Court denies Defendant's motion for summary judgment as to Count VI.

*Count VII: Piercing the Corporate Veil*

Insofar as Plaintiff alleges Diaz's liability as an alter ego of Quickstuff and A&C, this Court must determine whether to "pierce the corporate veil" of Quickstuff and A&C and disregard the corporate framework to impose liability on an individual. In *D.R. Horton, Inc. v. Dynastar Dev., LLC*, 2005 WL 1939778 (N.J. Super. Ct. Law Div. Aug. 10, 2005), a New Jersey court noted the state's two-part test for piercing a corporation's veil:

> First, the plaintiff must prove that the subsidiary was a mere instrumentality or alter ego of its owner. That is, that the parent or owner so dominated the subsidiary that it had no separate existence but "was merely a conduit for the parent."
>
> Second, the plaintiff must prove that the parent or owner has abused the business form to perpetrate a fraud, injustice, or otherwise circumvent the law. "Even in the presence of dominance and control, liability will be imposed only where the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law."

*Id.* at *27 (quoting *State Dep't of Envtl. Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (1983)). Furthermore, the Third Circuit has fashioned a "Federal rule," which has been applied by judges in this District, for determining whether a corporation was functioning as an alter ego. *See Avatar Business Connection, Inc. v. Uni-Marts, Inc.*, No. 04-1866, 2005 WL 3588482, at *10 (D.N.J. Dec. 29, 2005) ("[S]ome of the relevant factors for determining if a corporate entity is the alter ego of an individual or another entity is whether the corporation has non-functioning corporate officers or directors, the corporation fails to observe corporate formalities or, whether 'the corporation is merely a facade for the operations of the dominant shareholder or shareholders.'") (quoting *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir.1981)).

Plaintiff contends that Quickstuff and A&C were alter-egos that could have "simply been called Diaz I, Diaz II, Diaz III, *et seq.*" Pl.'s Br. at 19. Diaz does not seem to contest that the various corporations were mere instrumentalities for his business operation, but rather, argues that veil-piercing liability is usually imposed "only when the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice . . . ." Diaz Br. at 22 (quoting *Ventron Corp.*, 468 A.2d at 164). The Court finds that there is no dispute that Quickstuff and A&C had non-functioning corporate directors (the owners on paper, Avelino Castillo and Maria Castillo), nor is there any dispute that Quickstuff and A&C were mere facades for Diaz's business dealings with Lucca. The Court has already found that Plaintiff is entitled to summary judgment against Diaz regarding his fraudulent transfer of assets from Quickstuff to A&C. This fraudulent transfer is certainly an instance of Diaz abusing the corporate form to perpetrate a fraud against Plaintiff. Accordingly, Plaintiff's motion for summary judgment is granted as to Diaz's liability for Count VII.

Plaintiff makes no contention that Merinos was a dominant shareholder or owner of Quickstuff/A&C, nor does Plaintiff contend that Quickstuff or A&C was a Merinos alter-ego. Pl.'s Br. at 19. Therefore, Plaintiff has not articulated any basis for veil-piercing liability against Merinos. Accordingly, Plaintiff's motion for summary judgment is denied as to Merinos's liability for Count VII and the Court grants Defendant's motion for summary judgment as to Count VII.

## IV.  CONCLUSION

For the foregoing reasons Plaintiff's motion for summary judgment as to Diaz's liability is **GRANTED** for Counts I, II, III, V, VI, and VII; Plaintiff's motion for summary judgment as to Merinos's liability is **GRANTED** for Count I and **DENIED** for Counts II, III, V, VI, and VII;

Defendant's Motion for summary judgment is **GRANTED** as to Counts II, III, V, and VII and **DENIED** as to Counts I and VI. An appropriate order shall issue on this date.


Dated:   12/14/2016                                              s/Robert B. Kugler
                                                                 ROBERT B. KUGLER
                                                                 United States District Judge